FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 06, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                Plaintiff,<br><br>  v.<br><br>CITY OF SUNNYSIDE; AL ESCALERA, in his official and individual capacities; MELISSA RIVAS, in her official and individual capacities; CHRISTOPHER SPARKS, in his official and individual capacities; JOEY GLOSSEN, in his official and individual capacities; JAMES RIVARD, in his official and individual capacities;<br><br>                Defendants. | NO: 1:19-CV-3174-RMP<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DISMISSING WITHOUT PREJUDICE |

BEFORE THE COURT is a Motion to Dismiss, ECF No. 4, by Defendant City of Sunnyside. Plaintiff State of Washington ("the State") opposes the motion and filed an Amended Complaint during the briefing period for the Motion to Dismiss. ECF Nos. 7 and 10. The Court reviews the Motion to Dismiss in light of

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DISMISSING WITHOUT PREJUDICE ~ 1

the Amended Complaint. The Court also notes that although the motion initially was filed by Defendant City of Sunnyside ("Sunnyside") alone, defense counsel replied on behalf of all Defendants named in the Amended Complaint. ECF No. 13. The Court further heard oral argument from the parties. Fully informed, the Court grants the Motion to Dismiss, dismisses Plaintiff's Amended Complaint without prejudice, and gives Plaintiff leave to amend.

## BACKGROUND

The Court recites the facts alleged in Plaintiff's Amended Complaint, which Defendants maintain does not remedy the defects that they raise in their Motion to Dismiss. *See* ECF No. 7. The crux of the State's claims is that Sunnyside has systematically engaged in a policy of evicting renters without due process under its Crime Free Rental Housing Program ("CFRHP"), which Sunnyside established in 2010. Plaintiff alleges that the program's stated intent is "to reduce crime in rental housing through a partnership between police, residents, and landlords." *Id.* at 4. Plaintiffs allege that Sunnyside considers the program mandatory for all landlords, properties, and tenants in the city. Toward that end, landlords who do not comply with the CFRHP are required to pay the amount of the annual residential rental housing license fee, plus ten percent, while also losing their rental license. *Id.* at 5. By contrast, Sunnyside waives the annual residential rental housing license fee for landlords who participate in the CFRHP. *Id.*.

Plaintiff alleges that the CFRHP imposes various duties on landlords and Sunnyside police officers. Landlords or property managers must require tenants to sign a "Crime Free Lease/Rental Agreement Addendum" (the "Addendum"). ECF No. 7 at 6. The Addendum notifies the tenant that permitting or committing any of the crimes named in the Addendum, either on or near the rental property, will amount to a material breach of the lease. If Sunnyside police then determine that any tenant, household member, guest, or other person under the tenant's control has committed or permitted any of the listed crimes on or near the rental property, Sunnyside police must issue a notice of noncompliance to the landlord.

Within five business days of receiving the notice of noncompliance, the landlord must issue a notice to the tenant to "'comply or quit' the premises '(if required by law) and pursue all remedies against the residents available to the owner/licensee under the Residential Landlord-Resident Act of 1973 and the Manufactured/Mobile Home Landlord-Resident Act, as applicable, and all other remedies provided by law to terminate the tenancy and evict the residents.'" ECF No. 7 at 6 (quoting Sunnyside Municipal Code § 5.02.030 F). The landlord may appeal the notice of noncompliance in a hearing before the Sunnyside Police Chief. However, the State alleges that there is no appeal process for a tenant who is the subject of the notice of noncompliance.

Although the requirement set forth in the preceding paragraph indicates that the CFRHP imposes obligations on a landlord who receives even one notice of

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DISMISSING WITHOUT PREJUDICE ~ 3

noncompliance, the State also alleges that any "landlord who receives two notices from the Sunnyside police of criminal activity on any of the landlord's rental properties must participate in the CFRHP, unless the landlord makes a good faith effort to deter the criminal activity." ECF No. 7 at 5.

The State alleges that in enforcing the CFRHP Sunnyside employees have violated the procedures required by the Washington Residential Landlord Tenant Act ("RLTA"), Washington Revised Code ("RCW") chapter 59.18, and Unlawful Detainer Act, RCW chapter 59.12, since at least 2015. *See* ECF No. 7 at 7−8. The State alleges three specific incidents.

First, the State alleges that in 2017 a Latina woman who lived as a tenant with her seven children[1] refused her landlord's sexual advances. ECF No. 7 at 8. The landlord allegedly accused the mother and her son of stealing and called the Sunnyside police to evict the family. *Id.* The State alleges that Sunnyside police officers Defendants Melissa Rivas, Christopher Sparks, and Joey Glossen visited the home without a judicial eviction order and nevertheless told the family that they had two days to leave. *Id.* at 8−9. The State alleges that the family since has been unable to fine replacement housing that can accommodate the full household, relegating family members to separate living situations. *Id.* at 9.

---

[1] The Amended Complaint does not make clear whether the unnamed woman also lived with "a grandmother" or whether she herself is a grandmother. *See* ECF No. 7 at 8 ("In one incident in 2017, Sunnyside police evicted a Latina mother, a grandmother, and seven children without a judicial eviction order.").

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DISMISSING WITHOUT PREJUDICE ~ 4

Second, the State alleges that pursuant to the CFRHP Defendant Rivas in 2016 informed a pregnant Latina woman with three children that she had three days to vacate the low-income housing apartment where they had lived "without incident" for seven months. ECF No. 7 at 8−9. The State alleges that the family was evicted without formal eviction proceedings based on a "single fight" that occurred near the home, despite a lack of any criminal charges arising out of the fight. *Id.* The State contends that the family "initially stayed in a hotel, then with the mother's brother, and ended up without a permanent home for over a year." *Id.*

Third, the State alleges that in 2015 Sunnyside police searched a couple's rental home pursuant to a search warrant, with no arrests or charges resulting from the search. ECF No. 7 at 9. Nonetheless, Defendants Rivas and Rivard allegedly "required" the landlord, pursuant to the CFRHP, to notify the couple that they must vacate the property within three days, and Defendant Rivas allegedly visited the property three days after the landlord had served the notice and informed the couple that they had to vacate the property by midnight on the same day. *Id.* The State alleges that although no court eviction proceedings had been initiated Defendant Rivas went as far as informing the couple that they must leave Sunnyside and could not relocate elsewhere in the city. *Id.* The couple allegedly was homeless for more than one year. *Id.*

The State indicated at oral argument that it has learned of additional incidents since filing the Amended Complaint.

The State raises seven claims in the Amended Complaint: (1) under 42 U.S.C. § 1983, for allegedly violating Washington residents' "property interest in retaining possession of their rented homes" as protected by the Due Process Clause of the U.S. Const. amend. XIV, § 1; (2) under 42 U.S.C. § 1983, for allegedly violating Washington residents' "right to family integrity" as protected by the Due Process Clause of the U.S. Const. amend. XIV, § 1; (3) allegedly engaging in housing discrimination under federal law, through a pattern or practice of enforcing the CFRHP to the effect of limiting the availability of housing and imposing "different terms, conditions, and privileges in the rental of a dwelling because of national origin, familial status, and sex" in violation of 42 U.S.C. § 3604; (4) allegedly denying Washington residents their property interest in retaining possession of their rented homes, under color of law and without due process, in violation of the Washington Constitution art. I, § 3; (5) allegedly engaging in housing discrimination under Washington state law, through a policy or practice of enforcing the CFRHP in a manner that discriminates on the basis of national origin, status as a family with children, and sex, in violation of RCW §§ 49.60.030(1)(c), 49.60.222(b), (f); (6) violating the RLTA, RCW § 59.18.290, by enforcing the CFRHP in a manner that involves officers or landlords evicting tenants without a judicial eviction proceeding or order; and (7) evicting residents in violation of the RLTA's prohibition at RCW 59.18.580(2) against terminating a tenancy based on a household member's status as a victim of domestic violence or assault.

The State seeks to enjoin Sunnyside and its agents from engaging in the conduct at issue in the Amended Complaint and also requests "compensatory and punitive damages and other make-whole relief in the amount to be proven at trial." ECF No. 7 at 16.

Defendants move for dismissal by arguing that the State fails to establish standing to satisfy a showing of federal subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and fails to state a claim for relief that is plausible on its face under Fed. R. Civ. P. 12(b)(6).[2]

## DISMISSAL STANDARD

***Fed. R. Civ. P. 12(b)(1)***

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A court will dismiss a complaint under Fed. R. Civ. P. 12(b)(1) upon finding that the court lacks jurisdiction over the subject matter of the suit. Standing is an essential aspect of the constitutional limitation that federal-court jurisdiction extends only to actual cases or controversies. *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 37 (1976).

"The party invoking federal jurisdiction bears the burden of establishing standing. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal

---

[2] In the first paragraph of the Motion to Dismiss, Defendants indicate that they also pursue dismissal under Fed. R. Civ. P. 12(b)(7), but then do not further refer to that rule in the remainder of the Motion to Dismiss briefing.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DISMISSING WITHOUT PREJUDICE ~ 7

quotation omitted). When facing a motion to dismiss under Rule 12(b)(1), a plaintiff "must clearly . . . allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (internal quotation omitted). Courts must presume that they "lack jurisdiction unless the contrary appears affirmatively from the record." *Renne v. Geary*, 501 U.S. 312, 315 (1991). However, a court also presumes that the plaintiff's allegations in the complaint are true and construes the complaint in favor of plaintiff. *See Levine v. Vilsack*, 587 F.3d 986, 991 (9th Cir. 2009).

## DISCUSSION

### *Standing to Bring Claims under 42 U.S.C. § 1983 and the Fair Housing Act*

The State asserts standing to bring two claims under 42 U.S.C. § 1983 and one claim under the Fair Housing Act under the doctrine of *parens patriae*, "to protect its quasi-sovereign interest in 'the health and well-being—both physical and economic—of its residents in general.'" *See* ECF No. 10 at 8−9 (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez* ("*Snapp*"), 458 U.S. 592, 607 (1982)). Defendants argue that the State lacks *parens patriae* standing and, consequently, this Court does not have subject matter jurisdiction over the State's federal law claims. *See* ECF No. 13 at 2.

To proceed based on *parens patriae* standing, a state must meet the basic requirements of Article III standing and the unique requirements of the *parens patriae* doctrine. *Mo ex rel. Koster v. Harris* ("*Koster*"), 847 F.3d 646, 651 (9th Cir. 2017). To establish standing under Article III of the U.S. Constitution, "the plaintiff

seeking compensatory relief must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (quoting *Spokeo, Inc.*, 136 S. Ct. at 1547).

To pursue an action based on *parens patriae* standing, a state must further "articulate an interest apart from the interests of particular private parties." *Snapp*, 458 U.S. at 607. The state must be more than a nominal party. *Id.* Although there are "no 'definitive limits on the proportion of the population of the State that must be adversely affected,'" the State must allege more than injury to "'an identifiable group of individual residents.'" *Koster*, 847 F.3d at 651 (quoting *Snapp*, 458 U.S. at 607). The Court must consider the "'indirect effects of the injury . . . in determining whether the State has alleged injury to a sufficiently substantial segment of its population.'" *Id.* (quoting *Snapp*, 458 U.S. at 607).

In addition, the state must express a quasi-sovereign interest that is "sufficiently concrete to create an actual controversy between the State and the defendant." *Snapp*, 458 U.S. at 601. The Supreme Court has defined two general categories of quasi-sovereign interests. *Id.* The first category, raised by the State here, is "a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general." *Id.* In *Koster*, the Ninth Circuit found it unnecessary to reach the quasi-sovereign interest part of the *parens patriae* test after

it found that the plaintiffs in that case had not met the first requirement of showing an interest distinct from the interests of private parties. 847 F.3d at 651.

In this case, Defendants challenge whether the State has standing to pursue a federal civil rights claim or a federal housing discrimination claim "on behalf of unidentified and unnamed individuals." ECF No. 4 at 6, 8. After the State invoked the doctrine of *parens patriae* in the response brief, Defendants urged the Court to reject that basis for standing in their reply and at oral argument by arguing that the Amended Complaint lacks specific allegations regarding any statewide magnitude of the alleged injuries. ECF Nos. 10 at 8–13; 13 at 2–4. The State countered that the individuals would not be able to seek relief as private actors because they would not be able to support a claim for injunctive relief with a showing of a well-grounded fear of immediate invasion of their rights. Moreover, the State argued that the individuals' claims may be time-barred where the State's claims are not. The State further argued that the magnitude of the injury is sufficient to support *parens patriae* standing because the CFRHP exists in other municipalities throughout the state, so the challenged practices have potential effect beyond Sunnyside. *See* ECF No. 7 at 2 (alleging that other municipalities have implemented "some form of CFRHP" or are considering implementing such a program).

However, the Court finds that the Amended Complaint does not include sufficient allegations that the CFRHP is the cause of similar problems in other municipalities in Washington and does not otherwise sufficiently state a basis for

finding a statewide magnitude of the alleged injuries upon which the Court could base *parens patriae* standing. The State claims its *parens patriae* status by referring to the existence of the CFRHP throughout the State, but the Amended Complaint does not seek relief beyond the context of Sunnyside. In addition, the Amended Complaint articulates only three specific instances in which discriminatory treatment allegedly occurred through enforcement of the CFRHP in Sunnyside, a municipality with "over 16,000 residents." ECF No. 7 at 3. Three allegedly injured tenants in the context of one city of 16,000 people does not support an injury to more than an identifiable group of individual residents. Likewise, the Court cannot infer from allegations limited to a small city the size of Sunnyside that there are widespread discriminatory actions from enforcement of the CFRHP elsewhere in Washington.

Therefore, the State does not sufficiently articulate how the suit vindicates an interest by the State in nondiscriminatory treatment of its citizens generally. Nor does the State sufficiently allege that the three specific examples of allegedly discriminatory treatment occurring in one city are representative of a larger class of aggrieved tenants.

Having found that the State does not show that it is more than a nominal party, the Court does not proceed to the issue of the State's asserted quasi-sovereign interest. *See Koster*, 847 F.3d at 651. Furthermore, having determined that the State has not adequately alleged standing, the Court does not reach Defendants' other arguments for dismissal of the federal claims, including the application of the

relevant statutes of limitations and allegedly deficient pleading of liability based on policy or practice under *Monnell*.[3] Defendants' Motion to Dismiss, treated as a motion under Fed. R. Civ. P. 12(b)(1), will be granted.

***Remaining State Claims***

When "a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988). Therefore, without reaching the Defendants' arguments for dismissal of the state law claims under Fed. R. Civ. P. 12(b)(6), the Court dismisses the state law claims without prejudice.

Accordingly, **IT IS HEREBY ORDERED**:

1. The Defendants' Motion to Dismiss, **ECF No. 4**, is **GRANTED** in all parts except with respect to Defendants' request for dismissal with prejudice, *see* ECF No. 4-1 at 2, which is **DENIED IN PART**.
2. Plaintiff's Amended Complaint, ECF No. 7, is **dismissed without prejudice**. *See Mo. ex. rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) ("In general, dismissal for lack of subject matter jurisdiction is without prejudice.").

---

[3] *Monnell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

3. The Clerk of Court shall enter a judgment of dismissal without prejudice in favor of Defendants and against Plaintiff.

4. Plaintiff shall file any amendment **by January 20, 2020**. Failure to overcome the deficiencies identified with respect to standing will result in dismissal with prejudice.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order, enter judgment as directed, provide copies to counsel, and **close this case**.

**DATED** December 6, 2019.

*s/ Rosanna Malouf Peterson*
ROSANNA MALOUF PETERSON
United States District Judge

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DISMISSING WITHOUT PREJUDICE ~ 13